The opinion of the Court was delivered by
Tilghman J.
An application has been made to this Court, to sanction certain alterations proposed to be made in the charter, granted by an act of the general assembly, on the 13th day of September, in the year 1788, to the members of the religious society of Roman Catholics belonging to the congregation of St. Mary's Church, in the city of Philadelphia. The charter itself contains no provision for alterations, but, by an act of assembly, passed the 20th day of March last, this society were authorised to improve, amend, and alter the charter granted to them by the aforesaid act of incorporation, “in the same manner, and with the same privileges and powers as corporations established by virtue of an act of assembly, passed the 10th day of April, in the year of our Lord 1791, entitled, “ An Act *504 to confer on certain associations of the citizens of this Com" monwealth, the powers and immunities of corporations or bodies politic in law.” The mode' of altering this charter must therefore be sought for, in the act of 10th April, 1791 „ But before I consider that act, it will be necessary to remark, that the Roman Catholic Society were incorporated by the name, style, and title, of “ The Trustees of the Roman Catholic Society, worshipping at the church of St. Mary’s in the city of Philadelphia’’ and the said trustees, by the name aforesaid, and their successors, to be elected in the manner prescribed by the said act of incorporation, were to have perpetual succession, and all corporate powers were vested in them. I.et us now examine the act of 10th April, 1791. In the first place it authorises any number of persons, citizens of this Commonwealth, who are desirous of associating for any literary, charitable, or religious purpose, and of acquiring the powers and privileges of a corporation, to prepare an instrument in writing, specifying the objects, articles, conditions and name, under which they desire to associate. This instrument is to be exhibited to the attorney general, who is to transmit the same to the Supreme Court, with his opinion thereon indorsed, touching the lawfulness of the objects, articles and conditions contained, and set forth therein ; and if both the attorney general and the Supreme Court are of opinion, that the objects, &c. are lawful, it is to be sent to the governor, who is authorised to order it to be recorded, and upon its being recorded, the persons so associated immediately become a corporation, to have continuance by the name, style, and title in the said instrument declared. By the 2d section it is provided,that as often as the corporations established by virtue of the said act, and the successors thereof, respectively, shall be desirous of improving, amending, or altering the articles and conditions of the instrument upon which they are formed and established, it shall be lawful for such corporations, respectively, in like manner, to specify the improvements, amendments, and alterations which shall be desired, and the same to exhibit and present to the attorney general, and Supreme Court, who shall, in like manner, certify their opinions to the governor, touching the lawfulness of such improvements, &c., and the same being certified as aforesaid, shall, in like manner, be directed by the governor to be recorded, and upon recording thereof* shall be taken *505 and deemed to be a part of the instrument upon which such corporations, respectively, were formed and established, as if the same had originally been a part thereof.
Some of the members of St. Mary's church have appeared before us, and objected to the proposed amendments, and their counsel contend, that it is not a case in which the Court is required to express its opinion by the act of 10th April, 1791, because no alteration has been proposed by the corporation, but only by individuals of the society; on the contrary, that the trustees have protested against the proceedings of these individuals, as illegal and unconstitutional. This objection must be considered ; for, if well founded, the Court can proceed no further. In this- business of charters, the' Court acts under the grant of an extraordinary power, of a special nature, and confined to the cases described in the act of assembly. On adverting to the act it will be found, that there is a different mode of expression in the first section, which points out the manner of obtaining the charter, and the second which provides for the alteration. In the former, the application is to be made by the individual citizens, who desire to be incorporated ; in the latter, by the corporation. There was good reason for this difference. Although the individuals who apply for a charter, are said to be incorporated, yet after incorporation, they are -not known as individuals; they have no legal existence but as a corporate body. How that corporate body shall be organised, is expressed in the instrument of incorporation. In this of St. Mary's, it consists of the pastors of the church, (not exceeding three,) and eight lay members, elected annually, on the Tuesday of Easter week, by the members of the church, holding a pew, or part of a pew, and paying for the same not less than fifteen shillings a year. In those trustees are vested all the property, and all the powers and privileges of the corporation ; or, to speak more properly, they, and they only, are the corporation. Their existence is perpetuated by annual elections ; so that the corporation is undying and unchangeable, while the individuals who transact its business are subject to death and change. The security of the congregation against the misbehaviour of their trustees, lies in their power of removing them at the annual election, besides the punishment which may be inflicted by law. It is not to be feared, there *506 fore, that the desire of. the congregation to alter their charter, should be frustrated by their trustees, for any great length of time. If we regard the words of the act of assembly, the application for an alteration, is to come from the corporation. And if we consider the convenience of the thing, we shall find strong reasons for not departing from the words. Where the application is from the corporation, the Court is under no uncertainty. The 'whole body speaks with one voice. But if individuals come forward, and ask for an alteration, how is this Court to know if it be really the desire of the congregation ? Will a large majority be sufficient ? The act of assembly is silent. Must there be a majority of the members of the church, or only of those who hold pews or seats ? Of how many members does the congregation consist? Are the applicants really members of the society? Are we to inquire into all these things ? And in case of contested facts, are we to decide, or must they be tried by jury ? This Court sits in five districts, but can try issues in fact, only in the county of Philadelphia. The-act of assembly contemplates no difficulties of this kind ; no questions of fact are supposed. We are required to give ouropinion whether the proposed alterations be lawful, and that is all. But even this, we are not to do, until the attorney general has certified his opinion. And how is he to act in case of disputed facts ? Most certainly he can make no inquiry into them. Our attention has never been drawn particularly to this point before. There have been many alterations of charters, but none on which, so far' as came to our knowledge, the alterations were not desired both by the corporation, strictly speaking, and the individual members who composed the society at large. But suppose the corporation should abuse their trust, by proposing alterations not desired by the society: Are eight or ten persons to domineer, over a thousand? Such absurd and vicious conduct is hardly to be supposed. I h^ve no hesitation, however, in saying, that the corporation wbuld act extremely ill, if they came before this Court with an alteration, to which the assent of the society had not been obtained; and although I shall not commit myself by an opinion on a case not before us, yet the present strong inclination of my mind is, that on affidavits making such facts to appear, a remedy might be found, by which the rights of the society would be *507 protected. We have been pressed to consider the alterations in this charter, by intimations of alarming emergencies, if the congregation of St. Mary’s proceed to an election of trustees, in the present ferment of their minds. This Court has no right to yield to apprehensions of that kind. It must administer justice impartially, without regard to consequences. But in truth, I cannot bring myself to think, that there is danger of any serious disturbance. I cannot believe that the religious congregation of St. Mary’s will be so forgetful of their duty to God, and their country, as to make the election ground a scene of riot and bloodshed. But the counsel in favour of the amendments, has averred, that they have not been proposed without the concurrence of the trustees. It appears from the minutes of the corporation, that the subject of amendments has been many years under consideration, and committees have been appointed from time to time, to attend to it. But it is certain, that the corporation is no party to the piesent application; so far froth it', a formal protest has been very lately entered on their minutes. I forbear from saying any thing concerning the nature of the amendments, or the manner in which they were obtained; because we have only heard the evidence on one side. On both sides, however, we see gentlemen of good character, and have no- reason to question the motives of either. As the case stands before us, I take it, that the application for the alteration of the charter, is not only without the consent of the corporation, but absolutely against it, and under such circumstances, I think the Judges ought not tQ certify their opinion, touching the lawfulness of the proposed alterations.