## Comm'th. ex. rel. Claghorn et al. *vs.* Cullen et al.

| 13 | 133 |
|---|---|
| 28 SC | ᵒ197 |
| 13 | 133 |
| 214 | ˢ324 |

Substantive alterations of a charter without request or assent of a corporation, are unauthorized interferences with its franchises.

Such assent may be inferred from such acts or omissions as would raise a presumption in the case of natural persons.

But the assent must be given by the body who compose the corporation; and where this body is the stockholders, the directors or trustees have no power to accept or reject such alterations.

The *quo warranto* act of 13th April, 1840, is highly remedial and should be liberally construed.

A corporation does not become defunct from a simple neglect to elect officers, whilst the capacity to elect remains in the members.

To make valid, as the act of corporation, a vote of acceptance of an act altering a charter, it should be passed at a meeting, duly convened, after notice to all the members; and the election of corporate officers, in pursuance of a new, or the alteration of an old charter, is but presumptive evidence of such prior acceptance.

The opportunity to deliberate, and if possible, to convince their fellows, is the right of a minority, of which they cannot be deprived by the arbitrary will of the majority.

The purview of the 12th section of the act of 13th April, 1840, (*Pamph. laws*, 323,) covers all questions arising on writs of *quo warranto* between rival claimants of elective offices.

ERROR to the Common Pleas of *Philadelphia county.*

An information in the nature of a *quo warranto* was filed in the court below on the 19th of May, 1849, by John W. Claghorn and others, to show cause why Peter Cullen and others claimed to enjoy the franchises, &c. of The Equitable Life Insurance Company of Philadelphia. It set forth that a charter was granted in May, 1848, which provided that the corporate powers of the company should be exercised by a board of trustees to consist of six persons, and a secretary to be elected on the second Monday in December, anually, or within forty days thereafter. Until the first election the board of trustees was to consist of the seventeen persons named as commissioners to receive subscriptions, and that thereupon the company went into operation, and Claghorn was elected President; that on the 18th of January, 1849, within the forty days after the first election should have been held, a supplement to the charter was passed, which provided that the board of

NOTE.—The reporter was obligingly furnished with the report of this case, by W. H. RAWLE, Esq.

trustees should thereafter consist of seventeen persons and secretary to be elected by the stockholders in the manner prescribed by the charter, and that the board as it consisted on the 1st of January immediately preceding, should be continued in office until the next annual election thereafter; that while the company were in-operation under these two acts, the passage of another supplement was by some persons obtained on the 9th of April, 1849, which declared that the board of trustees should thereafter consist of seventeen persons to be elected in May, annually, the first election to be held in May, 1849, and repealed the supplement of January; that the act last mentioned had been obtained without the assent of the board of trustees or of the company, and that although certain of the stockholders might have assented to it, such assent had not been given by the trustees nor by the company in meeting duly convened, and that said act was in no way binding; that nevertheless Peter Cullen, vice president of the company, called a general meeting of stockholders, to elect seventeen trustees on the 7th of May; that the board of trustees before the day of election so named, passed resolutions refusing to accept the last supplement declaring the call for the meeting unauthorized, and appointing a committee to attend at the meeting of stockholders, to protest against any proceedings under that call; that the said Cullen, with others, still persisted in convening the meeting of stockholders at which the defendants were elected trustees, and the parties so elected thereupon ejected the old board of trustees, and usurped the franchises of the company.

The answer, after admitting the incorporation of the company and its going into operation, set forth that certain of the defendants who were of the number of commissioners and therefore of the first board of trustees, were not informed by the other members of the board of the intended passage of the supplement of January, 1849, in manner and form as set forth, yet that it was produced by Mr. Claghorn at a meeting of the board on the 24th of January, 1849: and that although no acceptance thereof was ever made either by the board or the stockholders, that the trustees continued to hold their offices under it; that while thus in office the supplement of April was passed, which was not only done with the knowledge of a large number of the trustees, but that the majority in value of the stockholders signed an acceptance of it and held an election in pursuance of its provisions.— The answer set forth at length the proceedings of this election. To this relators demurred.

The Court below decided that there had been no such acceptance of either supplement as to render it binding on the corporation, and made the following decree:

This cause came on to be heard at the June term, and was argued by counsel; and thereupon, upon consideration thereof, the

[Comm'th. ex. rel. Claghorn et al. *v.* Cullen et al.]

court do order, decree and adjudge as follows, this twenty-ninth day of September, A. D. 1849, to wit:

That judgment of ouster be entered against the defendants, and forasmuch as in the opinion of the court, the relators are not entitled to possess and enjoy the offices and franchises of the said "Equitable Life Insurance Company," the court do order an election to be held for trustees of said company at a general meeting of the stockholders convened for that purpose by ten days public notice in two or more of the daily papers of the city of Philadelphia, on Thursday the eleventh day of October, A. D. 1849, between the hours of ten A. M. and two P. M., and the court do appoint Frederick Fraley, Charles F. Lex, and William G. Alexander, Esquires, trustees to take charge of said corporation until others shall be elected in their stead, pursuant to the laws of this commonwealth, regulating said corporation, and this order of court; and the court do direct that the trustees appointed as aforesaid by this decree, shall give the public notice aforesaid, and shall be the judges at said election and receive the votes of the said stockholders duly qualified to vote, and shall make return to the court on Saturday, October 13, 1849, of the proceedings to be had by virtue of this decree.

The relators objected to this decree being entered on the ground that the argument had been directed to the validity of the April supplement, and not to that of January. An argument was then ordered by the court as to the efficacy of the January supplement, and in the meantime no decree was entered. After this argument the decree was entered as above.

The relators took out a writ of error of which they notified the three trustees appointed by the court, and warned them not to proceed with the election. The court below, under the 15th section of the act of 13th June, 1836, (*Pur.* 990, *quo warranto,*) then made a decree awarding execution of their former decree, notwithstanding the writ of error. The election was held and six of the defendants elected trustees. These proceedings the court confirmed and authorized the delivery of the property of the corporation by the three trustees appointed by the court, to the trustees thus elected.

The relators assigned for error :

1. "That the court below erred in deciding that the relators were not entitled to possess and enjoy the offices and franchises of the Equitable Life Insurance Company.

2. That said court erred in ordering that an election for trustees of said company be held on October 11, 1849, and in appointing Frederick Fraley, and others, trustees to take charge of the corporation in the interim."

*Fallon* and *Haly*, for plaintiffs in error.

1. The answer admits that the relators were "duly installed" under the charter and January supplement, which therefore recognizes the binding efficacy of the supplement. The subsequent denial that it was ever accepted is not responsive to the bill which does not aver acceptance. The denial, therefore, is worthless; *Smith's Ch. Pr.* 272. If the January supplement were invalid, why did the April supplement repeal it? The repeal recognizes its validity.

2. Actual acceptance of a charter or supplement is not necessary, it is only a mode of showing assent, and any act showing assent on the part of proper officers, will bind the corporation : Lincoln *vs.* Richardson, 1 *Greenl.* 81, Foster *vs.* Essex Bank, 16 *Mass.* 245. Assent may be presumed, as here, from a continued exercise of power : Bank U. S. *vs.* Dandridge, 12 *Wheat.* 71, Riddle *vs.* Proprietors of Canals, 7 *Mass.* 184, Charles River Bridge *vs.* Warren Bridge, 7 *Pick.* 344, *Ang & Ames on Corp.* 60, 107. And the more so as but for this supplement the corporation would be dissolved by failure to elect on the day appointed by the charter.

3. The April supplement was such a material alteration of the charter as not to be binding on the company without their assent, and comes within the principle of the Dartmouth College *vs.* Woodward, 4 *Wheat.* 188, St. Mary's Church, case 6, *Serg. & Rawle* 505, and 7 *Serg. & Rawle* 517, Indiana Turnpike *vs.* Phillips, 2 *Penn. Rep.* 184, Charles River Bridge *vs.* Warren Bridge, 7 *Pick.* 528, Brown vs. Hummel, 6 *Barr.* 86, &c. Nor was it ever accepted or assented to. Though acceptance may be implied from acts of assent on the part of the whole body of a corporation, or officers to whom such power is intrusted, a *written* acceptance, even if by a majority, will not be valid, unless executed at a meeting duly convened : Unangst *vs.* Shortz, 3 *Watts & Serg.* 45, Show *vs.* Wyse, 7 *Conn.* 214. Those not signing will not be bound by it : Middlesex *vs.* Locke, 8 *Mass.* 238, Livingston *vs.* Lynch, 4 *Johns. Ch. R.* 573.

4. But here the power to accept is not in the *stockholders*. The charter provides that "all the corporate powers shall be exercised by a *board of trustees*." Acceptances of charters must be by *the corporation*, and not by its individual members : St. Mary's Church case, 6 *Serg. & Rawle*.

5. The court had no power to make the decree appointing three trustees, &c., as the act of 1840, sec. 12, 13, 14, *Pamph.* 323, applies only to cases of irregular contested or disputed *elections*. Here the relators did not claim by election, but were in office under the charter and January supplement.

*W. H. Rawle,* (with whom was *G. W. Biddle,*) contra.
The answer expressly denies acceptance of the Jan. supplement.

1. As to its not being in this respect, responsive to the bill, this is a common law proceeding.   But even in equity, an answer if responsive is evidence, and requires two witnesses, or circumstances in addition to one witness, to contradict it.   If not responsive it is not evidence of the facts it contains, but must be proved; Clarke's executors *vs.* Van Reinsdyk, 9 *Cranch* 160, Hart *vs.* Ten Eyck, 2 *John. Ch. R.* 88, 90.   But by demurrer this distinction is lost, and the denial in the answer admitted.

2. None of the cases cited to prove a presumption of acceptance, of the January supplement, from an alledged absence of dissent, go so far as to fasten a supplement upon a corporation against the wishes of its stockholders, where no rights of third persons are concerned, and the exercise of power has not been long continued. In Foster *vs.* Essex Bank, Riddle *vs.* The Proprietors, and Charles River Bridge *vs.* Warren Bridge, the corporations were not allowed to defeat the rights of creditors by a denial of acceptance of powers under which responsibilities were incurred.   In the latter case in the S. C. 11 *Peters* 420, the want of acceptance was abaned.   The three months time between the passage of the two supplements, during which relators remained in office, is not so long continued as to bring the case within authority.   The answer to the argument that the law will presume an acceptance, because, in its absence a day of election will have passed by, and the corporation thereby dissolved, is that the failure to elect would not have dissolved the corporation which only happens from a permanent incapacity to restore an integral part; Lehigh Bridge Company *vs.* Lehigh Canal & Navigation Company, 4 *Rawle* 24, Slee *vs.* Bloom, 5 *John. Ch. R.* 336.   A corporation possesses a strong and tenacious vitality; Corporation of Colchester *vs.* Seaber, 4 *Burr.* 1866, and it requires a long non-user of franchises, to induce courts to presume surrender of corporate powers.   Briggs vs. Penniman, I *Hopk. Ch. R.* 300.   Opinion of Lord Somers, Lord Treby and Mr. Ward, as to the charter of Connecticut.

3. But any presumption of assent may be rebutted—as here by the passage of the supplement of April, defendants contended below that acceptance of this was shown by the holding of an election under it by a majority of the stockholders after public advertisement, which was the strongest evidence of acceptance; The King *vs.* Larwood, 1 *Raym.* 32, 2 *Cro.* 318, Newling *vs.* Francis, 3 *Serm. R.* 189, Charles River Bridge *vs.* Warren Bridge, 7 *Pick.* 344, Bank *vs.* Dandridge, 12 *Wheat.* 64, Railroad Company *vs.* Lawson, 4 *Shep.* 224, Bridge Company *vs.* Bragg. 2 *New Hamp.* 102, Trott *vs.* Warren, 2 *Tairf.* 227.   The written acceptance was not relied on.

4. All corporate powers are legislative, electoral or executive. The trustees exercise the first and last of these, and are no more than the agents of the company, 16 *East.* 6.   They have no pow-

[Comm'th. ex. rel. Claghorn et al. *v.* Cullen et al.]

er to accept or reject a supplement. If the stockholders have the right to elect the trustees, are they not the sole party to accept or reject an act touching that election? In St. Mary's Church case the trustees constituted the corporation itself, which is not so in commercial companies.

5. The act of 1840 is highly remedial. It must be taken together with that of 1836, and both construed as a whole. The latter act is taken from *Stat.* 9 *Anne c.* 2, Report of Commissioners, which has always been construed liberally, and to which all the statutes of jeofails have been applied. Under the narrow construction contended for, the machinery of a corporation would be stopped till a hearing before the higher court could be obtained, which the act of 1836, sec. 15 expressly provided against, by giving to the court below discretion to award execution, notwithstanding a writ of error ; a discretion which was exercised in this case.

The opinion of the court was delivered by

BELL, J.—So far as we may judge from the pleadings and accompanying exhibits, under which the cause is brought before us, it presents the history of a struggle between rival parties, for the government of a private corporation, pending which, each has sought the aid of special legislation, apparently too hastily accorded to both. Such a course is usually detrimental to the best interests of companies entrusted with the management of capital ; and it is to be feared the present instance cannot be esteemed an exception. Both the supplemental acts, here in question, propose to graft upon the original act of incorporation, some very material alterations. Each provides for an increase in the number of trustees, and for changing the time of their election. The earlier of them continued in office for an additional year the first board of managers, and directs the election of a Secretary by the whole body of corporators. If, under the facts developed, this is to be regarded as a valid amendment of the charter, the second supplement of April, 1849, becomes of decisive importance, not only because it fixes a new time for the annual election, and restores the appointment of Secretary to the Board of trustees, but by force also of its repealing clause, destructive of the first supplement.— Should, however, this be decreed invalid, then the changes proposed by the younger enactment, in the organization of the Board as originally designed, and the time of the election of its members, must be deemed radical in their character.

Of the numerous decisions that have been pronounced on this subject, it is unnecessary to bring to view other than the case of the Dartmouth College *vs.* Woodward, 4 Wheat., and our recent determination in Brown *vs.* Hummell, 6 *Barr.* 86, to prove that substantive alterations, such as those proposed by each of these supplementary acts, are not to be taken as parcel of a private

[Comm'th. ex. rel. Claghorn et al. *v.* Cullen et al.]

charter, without the previous concurrence of the corporators, manifested in some way recognized by the law. Unless so sanctioned they are esteemed as unauthorized interferences with a solemn compact between the public and the individuals composing the corporation; and, therefore, obnoxious to the constitutional prohibition touching the obligation of contracts. Whether this sanction has been extended to both, or either of the supplements of January and April, are the leading questions presented for decision. Each of the contending parties claim this advantage for the enactment of their own procurement; and deny it to the antagonist statute. Neither of them, however, pretend that there was any express, formal and recorded act of acceptance, either by the corporators at large, or the board of trustees; nor, as will presently be seen, was this absolutely necessary. That the then board of trustees tacitly gave their assent to the older supplement, is not to be denied; for, while the petition in effect asserts this, the answer admits it was produced as a recognized act, by the President of the Board, at a meeting held on the 24th January, 1849, and that the trustees, including several of the defendants, continued to hold their offices by virtue of the supplement, after the period for which they were first appointed.

Had these officers been clothed with power to accept or reject this statute, it is not to be doubted, their silent acquiescence in its provisions and continued exercise of authority by virtue of it, would have been sufficient to establish their assent. Anciently, indeed, it was supposed that, from the very nature of an artificial corporate body, it could legally manifest its acts and conclusions only by the use of its corporate seal, affixed to a deed in pursuance of authority previously given. But this idea has long since given way to the more reasonable doctrine, that the act or assent of a corporation may be inferred from such circumstances of commission or omission, as would raise a similar presumption in favor of or against a natural person. Corporations, it is now held, may be affected by implication, just as individuals are, and where its action or quiescence are the natural result, or necessary accompaniment of some other supposed precedent fact, the existence of that fact will be assumed, both for purpose of charge and discharge.— In the leading case of the Bank of the U. S. *vs.* Dandridge, 11 *Wheat.* 70, Mr. Justice STORY stated the principles thus, "acts done by a corporation, which pre-suppose the existence of other acts to make them legally operative, are presumptive proof of the latter;" and this is true, though no minute of them can be found among the records of the corporation. By way of illustration, he instanced the case of one notoriously acting as Cashier of a bank, and so recognized by the directors, which is sufficient of itself to raise a presumption of his due appointment, and his acts as cashier will bind the institution, though no written proof of the ap-

·pointment can be produced. Both in England, and with us, this principle has been liberally extended and applied, where the questions were of the acceptance of a charter. In this country, where private corporations are very numerous, and constant use of their ·privileges naturally engenders indolence in the creation of regular evidence of corporate acts, and negligence in its preservation, the recognition of presumptions, as legitimate sources of proof, was a legal necessity. While, therefore, a charter granted to persons who have not solicited it, is said to be *in fieri* until after acceptance, yet it is not indispensable to show a written instrument, or even a vote acceding to the grant, for, unless the charter expressly prohibit it, every formality may be presumed, from a continual exercise of the corporate powers.

This is also true of assent to a new or additional charter by an existing corporation, which may, in like manner be inferred from acts or omissions inconsistent with any other hypothesis; and where the new grant is beneficial in its aspect, it is thought very little is required to found a presumption of acceptance. Bank *vs.* Dandridge, 12 *Wheat.* 71, the Charles River Bridge *vs.* Essex Bridge, 7 *Pick.* 334, Trott *vs.* Warren, 2 *Fair'd.* 227, Bridge Co. *vs.* Bragg, 2 *New Hamp. R.* 102, Riddle *vs.* Proprietors of Canals, 7 *Mass.* 184, Penobscot Co. *vs.* Lawson, 4 *Shep.* 924, Kings *vs.* Avery, 1 *Term R.* 575, same case, 2 *Term R.* 515. Newling *vs.* Francis, 3 *Term R.* 189.

Nay, a single unequivocal act may be potent enough conclusively to establish assent; as, for instance, if a suit be brought and persisted in, where it could be sustained only under the provisions of the amended charter. A similar observation was made in deciding the Lincoln and Kentucky Bank *vs.* Richardson, 1 *Greenl. R.* 460, and the court added, that the stockholders of the Bank are bound by every act, which amounts to an acceptance on the part of the directors. But, if by this was meant that the whole body of the corporation may generally be so bound by the acts of their agents, selected to administer the affairs of the corporation, the proposition cannot be acceded to. As is well remarked of this proposition in another place, it is founded upon the consideration, that certain persons have been invested with sufficient power to bind the ·whole body by their acceptance, for where it is otherwise, the charter must be accepted by a majority of the whole number of the company; *Angel & Ames on Corporations*, 53.— Corporate powers are usually distinguished into legislative, electoral and administrative—in private corporations aggregate, though sometimes all the members act immediately in the administration of its affairs, usually, for the sake of convenience, the direct management is entrusted by the charter to certain officers, or board of managers, elected by the members at large, though deriving their ordinary powers from the act of incorporation. These officers ex-

ercise the legislative and administrative functions—the former in the institution of by-laws for the general government of the company, the latter in the superintendance and execution of its general business ; Union Turnpike Company *vs.* Jenkins, 1 *Caine,* 381.   In other instances, a select few, representing all those interested in the object of the association, are erected into and vested with all the powers of a corporation, and sometimes the selected branches are divided into distinct classes, as is the case in the corporation of St. Mary's Church, in this city.   When the corporate existence is devolved on a board of officers, they not only wield the whole corporate authority, but may apply for and agree to radical changes in the instrument to which they owe their corporate being.   When such a board is separated into integral parts, occupying distinct positions, both must concur in any act, having for its object an alteration of the fundamental law, though in the exercise of the ordinary powers of a corporation, they act jointly, and are governed by a majority of the united bodies, case of St. Mary's Church, 6 *S. & R.* 517.   But these and other authorities evidence, that where the whole body of stockholders, or other persons in interest, compose the corporation, the right of assenting to any proposed change in the charter, resides in them, though ordinarily represented by a board of directors, charged with the exercise of the corporate powers.   These in their capacity of managers have no authority, either to call for or assent to a change of the corporate constitution, but by the agreement of a majority of the corporators.   Being neither legislative nor administrative, the express assumption of such authority by the servants of the corporation, would be an usurpation, for it is paramount not only to every corporate function, but the constitution itself, and as it may touch the very existence of the body, it can only be exerted by that body.   It cannot then be said that the assent of the original trustees to the January supplement is such an act of acceptance, as will bind the corporation.   Yet, as we have seen, a long acquiescence, by the members of the company, in acts and declarations of the trustees, recognizing the supplement as part of the charter, might constitute conclusive evidence of assent to it.   Was there, here, any such acquiescence ?   Is there any thing shown, from which we can safely draw the inference, that the company, knowing of the supplement, agreed to it as a portion of their constitution ?

Perhaps it may be said that as the terms of the additional grant were favorable to the company, slight circumstances would justify a presumption of acceptance.   But is there any ground, however narrow, upon which we can safely erect such an hypothesis ?   I have looked with some solicitude, but in vain, for a precedent, that might justify an affirmative answer to this proposition, to which my judgment refuses its assent.   It does not appear that the com-

pany was ever officially notified of the enactment. The defendants swear it was first produced at a meeting of the board by Mr. Claghorn, then President, on the 24th January. By the provisions of the original charter, the truestees then in office might legally continue until about that time. From thence until the enactment of the second supplement, was a little over two months. During this interval we are not informed that the trustees or their agents performed any official act, or distinctly exerted the corporate power with the knowledge of their constituents. For aught the pleadings show, they sat still with folded arms, doing nothing, and requiring nothing. Now, it seems to me, that the mere omission of the stockholders to assemble in formal meeting within that period, for the purpose of electing other trustees, affords no presumption of assent sufficient to fasten upon them radical changes of their charter. Mere non-action for so brief a time, ought not to draw after it a consequence so serious, particularly when it is recollected that the call of such a meeting would come most appropriately from the board itself. In answer to this it is not sufficient to suggest that a failure to elect trustees ought to be received as strong proof of acceptance; since, without this, a dissolution of the corporation must ensue? Perhaps, anciently, such would have been the result; but the present doctrine is, that a corporation does not become defunct from a simple neglect to elect officers, while the capacity to elect remains in the members: Lehigh Br. Co. *vs.* Lehigh C. & N. Co. 4 *Rawle* 24; Slee *vs.* Bloom 5 *John Ch. R.* 336. It is said a corporation possesses a strong and tenacious principle of validity: Corp. of Colchester *vs.* Seaber, 3 *Burr*, 1816, and it therefore requires a long *non user* of franchises to induce the courts to presume a surrender of corporate rights: Briggs *vs.* Penniman, 1 *Hopk. Ch. R.* 300. It follows, the argument derives no aid from this source to establish a presumption of assent. But is there not evidence of positive dissent? We find that very shortly after its passage a sentiment of active hostility to the first supplement is manifested by a majority in number and value of the stockholders. When this began, we are not precisely informed, but we know that in less than three months after the date of the objectionable enactment, the feeling of opposition led to its repeal. It is fair, therefore, to infer, it commenced at the moment the law was communicated to the board of trustees. How then, with a knowledge of this important fact, can we regard the assertion that a majority of the company had agreed to accept it as an approved amendment of the first act of incorporation? It is, however, claimed that the supplement of April recognizes that of January to be in full force, because the latter repeals the former. The position is, that if invalid, a formal repeal of the unaccepted act was unnecessary. Admitting this, I am at a loss to perceive how mere supererogation can derive an unin-

tended positive effect from its non-usefulness. Besides, the repealing clause is not the work of the dissenting members of this corporation. Their rights are consequently unaffected by it. But the argument in favor of the first supplement is chiefly founded upon certain passages in the answer of the defendants, by which, it is said, they concede the first board of trustees were continued rightfully in office, by virtue of this supplement. It is obvious, however, these passages are but echoes of the relator's petition, introduced, not in confirmation of it, but with reference to the immediately preceding denial of acceptance formally averred, and thus putting in issue the title of the relators. It is replied, this denial is not responsive to the bill, which does not distinctly aver acceptance. I think this is a mistake. Although in this part of the conplaint there is no direct assertion of the assent of the company to the January supplement, that act is distinctly referred to as an operative portion of the charter, which it could not be without acceptance. But were this not so, the counter allegation would be by no means valueless. In equity proceedings, the distinction seems to be that an answer, if responsive, is evidence of the fact it alledges, requiring testimony to rebut it; but if the matter set forth be not responsive, it is not evidence of that matter at all, but must be proved: 1 *Smith's Ch. Pr.* 272, in note; Clark's Executors *vs.* Van Ramsdyk, 9 *Cranch,* 160; Hart *vs.* Ten Eyk, 2 *Johnson's Ch. Rep.* 90. But this is in fact a proceeding at common law. Under its system, a new defensive averment if it answers the plaintiff's case, is admissable. As, under our act of 1840, to be presently more particularly noticed, the relator's title may be put in issue, under the *quo warranto,* any allegation affecting it may be material, and its truth will be conceded by a demurrer. If, therefore, in this instance, we adhered strictly to tecnical rule, we might perhaps be compelled to say that the plaintiffs, by their demurrer, admitted the non-acceptance of the first supplement, and are thus concluded now to deny it. But as we think neither party contemplated this, when framing their pleadings, we prefer to rest our conclusions, as to this part of the case, on the absence of reliable proof of assent, either direct or inferential.

This brings us to the second question, whether there is any evidence of the acceptance of the April supplement? Our own determination in Shortz *vs.* Unangst, 3 *Watts & Serg.* 45, following earlier decisions, settles, that to make a vote of acceptance valid, as the act of a corporation, it should be passed at a meeting duly convened, after notice to all the members. In such cases, congregated deliberation is deemed essential, and where an opportunity for this is afforded, the decision of a majority is binding, if no other mode be prescribed by the charter. The private procurement of a written assent, signed by a majority of the members,

will not supply the want of a meeting. Such an expedient deprives those interested of the benefit of mutual discussion, and subjects them to the hazard of fraudulent misrepresentation and undue influence. Notwithstanding the objection, however, it seems to be agreed that a written acceptance, though not executed at a meeting, may be sufficient, if signed by all the stockholders, or parties in interest: Davies *vs.* Hawkins, 3 *Maul. & Selw.* 488; Stow *vs.* Wyse, 7 *Conn. R.* 214; Livingston *vs.* Lynch, 4 *John Ch. R.* 573; St. Mary's Church, 6 *Serg. & Rawle* 498. As this is not true of the paper of the 9th of April, 1849, the defendants very properly disclaim it, as furnishing evidence of acceptance.— But they rely on the unanimous act of the majority of stockholders, at a meeting convened by public advertisement, for the purpose of electing trustees, at which, those now exercising that office, received the whole number of votes of those in attendance. I concede there can scarcely be stronger evidence of acceptance than that furnished by an election of corporate officers in pursuance of a new, or the alteration of an old charter: King *vs.* Larwoad, 1 *Lord Raym,* 32; Lewling *vs.* Francis, 3 *Term. R.* 189. Yet, like other corporate acts, it is but presumptive evidence of the prior assent of the company, by a vote of its members, at some supposed meeting, or at least of a deliberate waiver of a vote by all in the corporation, having that right. But how can such a presumption be entertained, in the face of a remonstrance against the proposed election, made by some of the members on the ground of non-acceptance of the younger supplement? This is obviously out of the question. The record shows that the same persons who signed the written acceptance, also signed the requisition for a new election of trustees, claiming to be a majority of the stockholders; and that the votes subsequently cast were by the same individuals.

All this was done in disregard of a formal resolution, adopted by those then claiming to be trustees, repudiating the last supplement, and denouncing as illegal the election proposed to be held under it. This resolution was communicated by a committee appointed for that purpose, to the subsequent electoral meeting, but without effect. It will not do to say the resolution, as the act of a defunct body, was naught. It at least served to express dissent, entertained and expressed by a portion of the members—a dissent that could only be legally overcome at a meeting regularly convened to consider the proposed amendment. The opportunity to deliberate, and if possible, to convince their fellows, is the right of the minority, of which they cannot be deprived by the arbitrary will of the majority. That the call for an election, and the subsequent steps, were in contempt of this right, is manifest. The attempt consequently defeats itself. We have, therefore, no hesitancy in holding, there is an entire want of proof of the acceptance of either supplement.

Was the Court of Common Pleas authorized so to declare, in this proceeding, and so decree a new election? The relators insist, the only question before that court was as to the binding efficacy of the April supplement; and that their title as trustees under the act of January, was not in issue. But this objection proceeds from too narrow an estimate of the act of 13th April, 1840, though the 12th section of that statute speaks only of disputes between persons claiming to be duly *elected* to fill any office, its purview is broad enough to cover all questions arising on writs of *quo warranto*, between rival claimants of elective offices, though some of them may, as here, claim to hold by temporary legislative appointment. The object of the statute is to invest the court with power to settle the pretensions of all the claimants, in the same proceeding, whether they be complainants or defendants, and whether in or out of possession. To exclude from its operation, corporate officers, who, like these plaintiffs, derived their first appointment from the act of incorporation, in anticipation of a regular election, would be to sacrifice to literal interpretation, the plain intent of the law-givers. The act speaks of disputed elections, between persons claiming to be duly elected, and these, doubtless, were principally regarded in passing its provisions. But cases like ours are within the mischief intended to be remedied, and so, questionless, within the equity of the statute, which, being highly remedial, ought to be so literally construed as to secure the attainment of substantial justice. Here then, is a case of contested election, intimately connected with the title set up by the plaintiff and almost necessarily involving an investigation of it. Being within the object of the act, which was to end disputes at a blow, that title was as open to enquiry as the defendant's. The result shows that neither party was entitled to enjoy; and this put it within the authority of the court to order a new election. This conclusion leaves to the company the right of determining, in an orderly way, whether it will accept of either supplement, as an amendment of its charter, and if so, which of them? The dispute now existing may be so settled as to leave no room for future contest—a consummation much to be desired by a business corporation, situate as this is. It is gratifying to find that the conclusions of the law are thus in harmony with the best interests of the corporators, and we accordingly recommend that steps be taken as soon as practicable, to terminate this unhappy disagreement.

Proceedings affirmed.