## African Methodist Episcopal Union Church.

*Appeals—Certiorari—Record—Corporation—Charter—Amendment.*

On an appeal from a decree of the court of common pleas amending the charter of a church, the only question reviewable in the Superior Court is the regularity of the proceedings as shown by the record brought up by the certiorari.

*Corporation—Charter—Amendment—Notice—Meetings.*

Where under the charter of a church, an amendment thereof can only be adopted by the votes of two-thirds of the male members of the congregation, an amendment adopted at a meeting by the required two-thirds votes, and subsequently signed by more than two-thirds of the members of the congregation, being the same persons who had voted for the amendment at the meeting, cannot be sustained if it appears that no notice had been given that the amendment would be proposed at the meeting.

Argued Oct. 13, 1904. Appeal, No. 48, Oct. T., 1904, by Right Reverend Bishop W. B. Derricks et al, from decree of C. P. No. 3, Phila. Co., March T., 1903, No. 2966, amending charter of the African Methodist Episcopal Union Church of Philadelphia. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Petition to amend charter of the church.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in not overruling exceptions to report of master, Victor S. Thomas Esq.

*Wendell P. Bowman*, with him *Henry W. Bass*, for appellants.—There was no notice to its members that at the annual meeting the charter of the church would be amended: Bagley v. Reno Oil Co., 201 Pa. 78.

A signing of amendments is not voting: Shortz v. Unangst, 3 Watts & Sergeant, 45; Com. ex rel. v. Cullen, 13 Pa. 133; Langolf v. Seiberlitch, 2 Pars. Eq. 64.

*George Bradford Carr*, for appellees.

OPINION BY MORRISON, J., July 13, 1905:

This is an appeal from the decree of the court of common

pleas No. 3 of Philadelphia county amending the articles of incorporation or charter of the African Methodist Episcopal Union Church of Philadelphia. This church was duly incorporated by the decree of the court of common pleas of Philadelphia county on December 1, 1851. At the annual meeting of the corporation, April 10, 1902, called for the purpose of electing three trustees, a committee of five was appointed to revise the church charter, as to the quorum necessary to make repairs to the church, changing it from two thirds of the entire male membership to two thirds of those present.

This is an appeal and a certiorari; and at the threshold of the case we are met with the objection by the counsel for the appellees " that the merits of the application are not before this court for review, the only question reviewable here is the regularity of the proceedings as shown by the record brought up by the certiorari." Citing Vaux's Appeal, 109 Pa. 497; In re Grand Lodge, A. O. U. W. 110 Pa. 613; Phila. & Trenton R. R. Co., 6 Wharton, 25; Commonwealth v. Ramsay, 166 Pa. 642; Hopkins v. Commonwealth, 50 Pa. 9; and Act of April 29, 1874, P. L. 73, sec. 42. These cases establish the counsel's contention that we can only review the regularity of the proceedings as shown by the record and we propose to strictly confine ourselves to the record in this case.

The petition which is brought up by the certiorari is the foundation of the proceedings and on it the decree of the court amending the articles of incorporation must stand or fall. To this petition a copy of the constitution and articles of incorporation and a copy of the proposed amendments were attached and made part of the petition. There was also attached to the petition and made part thereof, the minutes of the corporation of April 10, 1902, May 1, 1902, and May 22, 1902. The petition shows that on April 10, 1902, the president, on motion, appointed a committee to revise and amend the articles of incorporation; that at a meeting of said corporation, held on May 1, 1902, said committee reported certain proposed amendments and certain new provisions of the constitution; which were severally read by paragraphs and each section thereof acted upon, but the president decided that the required number of the male members of the corporation were not then present and their signatures had not been obtained, and he

then and there fixed May 22, 1902, in the lecture room of the church, as the time and place for the next meeting of the corporation to act upon said amendments and new clause in the articles of incorporation.    That at the meeting held on May 22, 1902, eighty-four male members of the corporation were present, and eighty-three of them voted in favor of the amendments as adopted, and each one of the eighty-three members subscribed his name to them assenting to the same.    That the entire male membership of the corporation was 120.    That only male members were qualified to vote and that said amendments were approved and adopted by more than two thirds of the male members of the corporation as required by article 6, section 1, of the original articles of incorporation.    Article 6, section 1, is as follows : " At the meetings of the corporation, after proper notice given, lawful business may be transacted by the concurrence of two-thirds of the members present except it be to buy or sell property, to borrow or lend money, to alter or amend this constitution, in which case there shall be required the number as specified in Article 3."

Article 3, section 2: " The Trustees or their successors in office, shall not alien, convey, mortgage, or in any other way dispose of any part of the estate, real or personal, belonging to the said corporation, otherwise than by the consent of two thirds of all the constitutional members of the corporation." Thus it clearly appears that to make these vital and important amendments to the constitution or charter of the corporation, the affirmative vote of two thirds of the 120 male members of the congregation was required.    A careful examination of the minutes of the three meetings referred to, at which the amendments were considered, and only at said meetings, discloses the fact, beyond controversy, that there never was a proper notice given to the voting members of the corporation of a meeting for the purpose of amending the articles of incorporation ; that the articles said to have been adopted on May 22, 1902, embodied in the decree of the court, were never voted upon in the ordinary parliamentary manner at any meeting of the corporation.    The only method attempted for the adoption of the proposed amendments was the circulation of a paper among the members present, for their signatures on May 1, and May 22, 1902, and the petition shows that only eighty-four

of the 120 male members signed the paper. The record absolutely fails to show any notice, deliberation, vote or proceeding, whatever, to bind the minority composed of thirty-six male members. The question then arises how did the court acquire jurisdiction to decree these amendments so that they would bind the dissenting minority? If it be conceded that those who signed the paper were bound, which may be doubted, by no system of reasoning or legal method, can we hold that the minority members were subject to the jurisdiction of the court. A meeting of the male members of the corporation should have been called, on plain legal notice of a desire or intention to amend the articles of incorporation or charter, and such meeting being convened the question should have been put before the body on the adoption of the amendments. On this question there should have been deliberation and consideration, if the same was desired by but a single voting member, and after such deliberation, etc., an affirmative vote of two thirds of the male membership of the corporation would have been sufficient to have adopted the amendments.

That the articles of incorporation or charter could not have been amended without notice is ruled in Bagley v. Reno Oil Co., 201 Pa. 78. In that case it was held that even a change in the by-laws of a corporation, increasing the number of directors, cannot be made at a regular or annual meeting of the stockholders, in the absence of notice previously given of the change contemplated. In Shortz v. Unangst, 3 W. & S. 45, it was held : " That the incorporation of a religious society must be done by the consent of the congregation. That the congregation should be notified. As being preparatory to a change in their constitutional existence, the object of convening the meeting should be communicated in the notice. This would apprise the members of what was to be done, and if they did not attend, they could not complain. When thus assembled, the decision of the majority would be binding." The above is the language of the court below but it was affirmed by the Supreme Court.

In Ehrenfeldt's Appeal, 101 Pa. 186, it was held, as stated in the syllabus : " The pastor of a church having been appointed to draw up a constitution, did so, and then notified the congregation from the pulpit, that it would be read on a

certain day. He gave no notice, however, that it would then be acted upon. It was so read on the day fixed, and immediately adopted with but one dissenting vote. *Held*, that the defect in the notice was sufficient to render the action of the congregation in adopting the constitution irregular and invalid."

In Commonwealth ex. rel. Claghorn v. Cullen, 13 Pa. 133, it is said (p. 143) : " That to make a vote of acceptance valid, as the act of a corporation, it should be passed at a meeting duly convened, after notice to all the members. In such cases, congregated deliberation is deemed essential, and where an opportunity for this is afforded, the decision of the majority is binding, if no other mode be prescribed by the charter. The private procurement of a written assent, signed by a majority of the members, will not supply the want of a meeting. Such an expedient deprives those interested of the benefit of mutual discussion and subjects them to the hazard of fraudulent misrepresentations and undue influence." See Langolf v. Seiberlitch, 2 Parson's Equity, 64.

In the present case we have about twenty closely printed pages of the learned master's report, supplemented with about as many more pages of argument of the counsel for the appellee and giving due weight to all of this, as argument, it does not enable us to get around or away from the fundamental and radical errors which we have already pointed out in this opinion. The learned counsel for the appellant has furnished us with thirty-five assignments of error which we do not propose to consider seriatim. We think the first four assignments of error are fully sustained and they require the reversal of the decree and as the petition will be dismissed it is not necessary to consider the other assignments.

The decree is reversed and the petition is dismissed at the costs of the petitioners.