124

## Price v. Lester M. Bloch Building and Loan Association

*Charles Polis*, for plaintiff; *Hirschwald & Goff*, for defendant.

KUN, J., November 21, 1932.—This is a rule for judgment for want of a sufficient affidavit of defense. The broad question involved is whether a defendant building and loan association may avoid the entry of judgment against it in a suit by a withdrawing stockholder for the withdrawal value of his shares, by the contention that it is not in a liquid position and that if required to pay withdrawing stockholders it would have a "strong tendency" to cause insolvency of the association, though at the same time the defendant admits and reasserts that it is in fact solvent. Whether the facts disclosed would be a basis for stay of execution is questionable. We are satisfied, however, that they are insufficient to prevent the entry of judgment in favor of the plaintiff.

It appears that the plaintiff gave notice of withdrawal on January 26, 1932. Less than four weeks prior to that date, to wit, as of December 31, 1931, the

defendant issued its financial statement showing it to be in a strong and healthy position, with a special reserve of $36,000, a contingent account of $12,599.05 and profits of $72,525.48. This is admitted without qualification. The summons in assumpsit in this case issued on May 26, 1932, and was served on the defendant on the following day. In the statement of claim it is alleged that on May 10, 1932, the defendant had cash on hand amounting to $15,664.82, and this is admitted. The requirement that in such a case as this the plaintiff must state that there were in the treasury of the association sufficient funds to meet his demand, or that one-half of the funds therein would pay his claim, is present in the instant case by the facts pleaded, which is quite preferable to a mere statement to that effect. That is to say, the plaintiff's claim is less than $2000 and it is shown that there was approximately $16,000 in the treasury of the defendant association when he filed his suit. Accordingly, it is our opinion that the requirement referred to in Brown v. Victor Building Ass'n, 302 Pa. 254, has been met. It is to be noted that the plaintiff's claim is less than one-eighth of the funds in the defendant's treasury. In the Brown case no financial statement formed a part of the pleadings, whereas in the instant case there is attached to the statement of claim a financial statement showing the healthy financial condition of the defendant at the time of the plaintiff's withdrawal, showing a large reserve fund, contingent fund and profits, all of which is admitted in the affidavit of defense. In addition, the defendant admits solvency, whereas in the Brown case the defendant made no such admission. Obviously, this played an important part in the court's decision in the Brown case because the opinion shows that the court relied on Christian's Appeal, 102 Pa. 184, in which the association was absolutely insolvent.

In the instant case, the defendant, as stated, admits that it is solvent, that it is continuing to accept dues from its members and otherwise acting as a solvent association, making stock loans, canceling shares of stock in discharge of indebtedness to the association, and has used funds to make settlements with stockholders who gave notice of withdrawal after plaintiff's notice. Justification is sought for this preferential treatment of subsequent withdrawing stockholders because the defendant was able to drive a hard bargain with them by getting them to accept fifty per cent. of their claims. The law is not influenced by any such considerations. The fact disclosed is that the defendant did have funds available for payment to withdrawing stockholders which it used to pay stockholders whose rights accrued subsequent to those of the plaintiff. The other fact disclosed is that the association made stock loans from the time of the plaintiff's notice of withdrawal, January, 1932, to the date of his suit, May, 1932, in the amount of $7400, making it apparent that the association could have used at least half of that amount for the payment of claims of withdrawing stockholders.

The other undenied allegation is that charging the defendant with making stock loans to shareholders and thereafter permitting the borrowers to cancel out their stock in payment of loans. We cannot countenance any such procedure, which is in effect giving such persons their withdrawal value to the prejudice of the rights of the plaintiff, and perhaps other persons who have given notice to withdraw. The inequality produced by such a scheme is apparent. It gives a preference to borrowing stockholders over non-borrowing stockholders—a palpable inversion of their equitable rights.

In these circumstances the contentions of the defendant that it does not know how to compute the withdrawal value of the plaintiff's stock, because if the association had to liquidate it does not know what would be obtainable for its assets, and its fear that to pay the withdrawing stockholders would "pre-

cipitate insolvency or have a strong tendency to do so" (taking this phrase from Stone *v.* Schiller, post), without any averment of facts to support such a fear, cannot be used as a basis for denying the plaintiff's right to judgment.

"The fundamental basis governing the right of withdrawal is that the association must be solvent:" Stone *v.* Schiller B. & L. Ass'n et al., 302 Pa. 544, 552. The defendant persists that it is solvent, but suggests that the plaintiff cannot have judgment because it is not liquid. This is a novel contention which we cannot sustain. Nonliquidity may be a factor on the question of execution, but never as to the right to a judgment.

The other contention of the defendant, that it should be permitted to hold on to its cash, its reserve and its contingent and profit accounts, in order to be prepared to meet uncertain contingencies, is likewise untenable. As pointed out by Mr. Justice Kephart in the Stone case, page 554: "A withdrawing stockholder is not obliged to share losses after a notice of withdrawal has been given to a solvent corporation." The acts of assembly (May 14, 1913, P. L. 205, Sec. 1 (a), and April 8, 1927, P. L. 179, Sec. 1), which permit associations to set up reserve funds out of profits only, specifically provide that no association shall reduce the dividend or interest payable on a voluntary withdrawal by reason thereof.

We can find no merit in any of the defenses set up by the defendant association. We are of the opinion that the plaintiff, under the pleadings, has a much stronger case than the plaintiff had in Sperling *v.* Euclid B. & L. Ass'n, 308 Pa. 143, in which judgment for the plaintiff was sustained, though in that case the plaintiff was a matured stockholder. The basic ground of the right there discussed was the solvency of the association at the time the stock was matured, and in the instant case it is the solvency of the association at the time the plaintiff gave his notice of withdrawal. No facts pleaded in either case showed a subsequent insolvency.

There remains but one question, that is, the amount of the judgment to be entered for the plaintiff. The plaintiff pleaded that he paid in the sum of $1390. This was categorically admitted. The plaintiff claims he is entitled to six per cent. interest thereon, as the by-laws fail to fix the amount of interest on withdrawals. As to this it is claimed by the defendant that shortly prior to the withdrawal notice of the plaintiff the defendant, at its annual meeting, adopted a by-law as follows: "No interest shall be allowed on shares withdrawn from the association."

The plaintiff attacks the validity of this by-law for several reasons. It is admitted that under the defendant's charter and the laws of the Commonwealth of Pennsylvania the by-laws of the defendant can be amended only on written notice of the proposed change in the by-laws, which must be given to every shareholder; that said notice must state the proposed change in full and the place and date of the meeting at which the proposed change will be discussed. The plaintiff pleads definitely that the defendant never sent him a written notice of any change. This is not specifically denied, but defendant alleges that plaintiff received notice of the meeting, by reason of the fact that the time and place of annual meetings appear in the receipt book, and because notice of the meeting was published in The Legal Intelligencer. Neither of these is a compliance with the mandate of the law requiring that written notice of any proposed change in the by-laws must be given to every shareholder.

Aside from that, the notice as published in The Legal Intelligencer, which is set forth in the pleadings, does not meet the requirement of the law that such notice "must state the proposed change in full." The published notice of the meeting states that it is "for the purpose of ratifying amendment dealing with

interest on withdrawals," but avoids statement of "the proposed change in full;" that is to say, that "no interest shall be allowed on shares withdrawn from the association." The notice as published might not excite the interest of a shareholder, who would be quite willing to have some change made in the payment of interest on withdrawals, but his interest might be very much excited if he were advised that it was proposed to provide that no interest whatever should be paid on withdrawals. The difference is apparent.

The organic law of the state requires that the notice of a meeting to amend the by-laws of an association must "state the proposed change in full." This the defendant association failed to comply with in respect to the amendment to the by-laws which it passed, providing that no interest should be allowed on shares withdrawn from the association. We hold, therefore, that this action of the association was abortive and of no legal effect: Bagley v. Reno Oil Co., 201 Pa. 78; Johnson v. Mutual Guarantee B. & L. Ass'n, 66 N. J. L. 683; Endlich on Building Associations (2d ed.), 146, Sec. 159; 3 Fletcher, Encyclopedia Corporations, Sec. 1639.

It is interesting to note that in African Methodist Episcopal Union Church, 28 Pa. Superior Ct. 193, an amendment, though adopted by two-thirds of the members of the congregation and subsequently signed by more than two-thirds of the members, being the same persons who had voted for the amendment at the meeting, was nevertheless held invalid because no notice had been given to all the members that the amendment would be proposed at the meeting.

This throws us back on the provision in the by-laws of the association, article two, section eight, with reference to withdrawals and interest payable thereon, which we find provides that it shall be at such rate as shall be fixed by the directors prior to the time when the notice of withdrawal is received. It has been held, however, that such a by-law is invalid, as the interest rate on withdrawals must be fixed by the by-laws, and this right cannot be delegated to the directors of the association: Hockfield v. Woloderker B. & L. Ass'n, 85 Pa. Superior Ct. 336.

It follows, therefore, under the authority just cited, that the plaintiff is entitled to interest at the lawful rate, calculated on the amount of dues paid in by him, to wit, the sum of $1390.

Rule absolute.